**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ANTHONY MACK** | : |
| | : |
| | : **CIVIL ACTION** |
| *Plaintiff,* | : |
| **v.** | : **No. 23-4386-jhs** |
| | : |
| **BUCKS COUNTY,** *et al.* | : **JURY TRIAL DEMANDED** |
| | : |
| *Defendants.* | : |

# ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Federal Civil Procedure 12(b)(6) filed by Defendants Bucks County and Officer Phillip Smythe, and Plaintiff's response thereto, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is hereby **DENIED**.

_____
, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY MACK** : | |
| : | CIVIL ACTION |
| *Plaintiff*, : | |
| v. : | No. 23-4386-jhs |
| : | |
| **BUCKS COUNTY**, *et al.* : | JURY TRIAL DEMANDED |
| : | |
| *Defendants*. : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff Anthony Mack (hereinafter, "Plaintiff" or "Mr. Mack"), by and through his counsel, van der Veen, Hartshorn, Levin, and Lindheim, hereby submits this response in opposition to the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendant Bucks County and Phillip Smythe (hereinafter, collectively, "Defendants").

**BACKGROUND**

Plaintiff Anthony Mack initiated the underlying suit on November 9, 2023, alleging numerous constitutional violations occurring while he was detained at the Bucks County Correctional Facility. At all times relevant hereto, Plaintiff was a pretrial detainee awaiting trial on pending criminal charges.

On January 14, 2023, Defendant Phillip Smythe (hereinafter, "Officer Smythe") violently assaulted Plaintiff, a then 58-year-old man with a heart condition, when Plaintiff simply asked to exchange his cold tray of food for a warm tray. Plaintiff had recently been told by a supervising officer that if he ever received a cold food tray, he could simply make a request to the officer on duty to replace the tray. When Plaintiff followed this instruction and asked Officer Smythe to exchange his tray, Officer Smythe curtly responded that Mr. Mack could either throw his tray out

1

or sit down.  Plaintiff responded by requesting to speak with the Sergeant on Duty, given what he had been previously told.  Officer Smythe informed Mr. Mack that he would not be speaking with anyone, and Mr. Mack turned toward the cafeteria tables with his cold tray, seeking to avoid any further issue and realizing the escalating nature of the situation.  Angered by this interaction, Officer Smythe proceeded to smack Mr. Mack's food tray out of his hands and tackle him onto the concrete floor.  Plaintiff experienced severe pain in his chest and felt his ribs "pop."  An infirmary nurse briefly examined Mr. Mack after the incident and determined he was uninjured, ignoring his consistent complaints of severe chest pain.

Immediately thereafter, Bucks County Correctional Officers placed Mr. Mack on restrictive housing status, meaning that he was denied all privileges.  Plaintiff continually asked why he was being punished as the victim, and Sergeant O'Donnell informed him that it was the facility's policy after any use of force incident, the involved inmate would be placed on RHU status pending further review, regardless of perceived fault.  However, Bucks County never afforded Mr. Mack the opportunity to plead his case before a hearing officer during the three days he spent in segregation.

Following the incident, although the Bucks County medical faculty denied that he had suffered physical injury, Mr. Mack continued to experience considerable chest pain and pain in his hip.  Subsequent to being attacked, Plaintiff developed a mass in his right hip for which he is still undergoing diagnostics.  Upon information and belief, this mass was caused by the assault perpetrated by Officer Smythe.

**LEGAL ARGUMENT**

I.   **Standard of Review under Rule 12(b)(6)**

"Pleadings must be construed as to do justice." *F.C.R.P.* 8(e).  Except under certain limited circumstances, a complaint need only comply with Rule 8(a)(2), which merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Kuhns v. Allentown*, 636 F.Supp.2d 418, 425 (E.D.Pa. 2009)(quotations omitted).  When reviewing pleadings for legal sufficiency under Rule 12(b)(6), the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Nelson v. Temple Univ.,* 920 F.Supp. 633, 635 n.2 (E.D.Pa. 1996)(citing *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994)).

Courts "should not affirm a dismissal at the pleadings stage, ***especially in a civil rights action***, unless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir. 1984)(emphasis added); *see also*, *Davis v. City of Philadelphia*, 284 F.Supp.3d 744, 754 n.17 (E.D.Pa. 2018)(noting that "several other courts in this circuit, recognizing *Monell* plaintiffs' lack of access to municipal policy information at this early stage, have held that plaintiffs are not required to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, or explain how these precisely alleged policies caused or contributed to their injuries.")(quotations omitted).  A complaint should not be dismissed merely because it appears unlikely that the plaintiff will be able to prove the facts asserted or prevail on the merits.  *McTernan v. City of York, PA,* 564 F.3d. 636, 646 (3d Cir. 2009).

3

Courts have similarly expressed considerable leniency at the pleading stage for claims against a municipal entity.

**II.     Plaintiff's injuries are not *de minimis* and such a determination would be inappropriate at this stage in the proceedings.**

Defendants Bucks County and Officer Smythe argue that Officer Smythe tackling an inmate twice his age with a heart condition to the concrete floor, crushing the inmate with his full body weight without any justification, should be excused as *de minimis* use of force. Stated differently, Defendants contend that corrections officers should be permitted to physically abuse pretrial detainees without any justification, as long as the injuries are not severe. Pretrial detainees are presumed innocent in the eyes of the law until they are convicted and sentenced and, as such, they should not be subjected to *any* physical manhandling in excess of that necessary to maintain order, security, and safety within facility.

Excessive force claims brought by pretrial detainees are governed by the Fourteenth Amendment, as opposed to the Eighth Amendment which applies exclusively to excessive force claims brought by convicted prisoners. *Jacobs v. Cumberland County*, 8 F.4th 187, 194 (3d Cir. 2021). Pretrial detainees need only establish that the force used against them was objectively unreasonable in order to state a claim for excessive force.[1] *Id*. "[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)(quotations omitted). Courts must make this determination from the perspective of a reasonable officer on the scene, taking into consideration the legitimate interests of the facility to preserve security and internal order. *Id*. Considerations that may bear on the reasonableness of the force used include: "the relationship between the need for the use of force and the amount of

---

[1] By contrast, convicted prisoners must establish that the use of force was malicious or sadistic in addition to the objective unreasonableness requirement. *Jacobs*, 8 F.4th at 194.

4

force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. Further, where an officer is not facing a disturbance or any other threat to security and the pretrial detainee is obeying orders, a reasonable fact finder could determine that there was no need for ***any*** force. *Jacobs*, 8 F.4th at 195-96.

Here, similar to the situation described in *Jacobs*, Officer Smythe assaulted Mr. Mack without any justification, rendering the use of *any* force objectively unreasonable. Officer Smythe was not facing a disturbance nor any threat to security at the time he assaulted Mr. Mack. Further, Mr. Mack did not disobey any order or instruction from Officer Smythe that may have warranted the use of force. Mr. Mack merely requested a warm tray of food and found himself tackled to the ground by an officer half his age. He felt his ribs "pop" with every breath, accompanied by a sharp pain in his chest. Viewing the allegations as true, Officer Smythe's use of force against Plaintiff for simply asking to speak to his supervisor was objectively unreasonable.

Likely aware that Plaintiff's pleadings satisfy the objective unreasonableness standard, Defendants attempt to avoid its application by claiming that the force used against Mr. Mack was *de minimis* in nature. Plaintiff does not dispute that there are some *de minimis* violations which elude Constitutional protection. *Ingraham v. Wright*, 430 U.S. 651, 673 (1977). However, Plaintiff adamantly disagrees with Defendants' suggestion that what constitutes a *de minimis* violation under the Eighth Amendment necessarily constitutes a *de minimis* violation under the Fourth and Fourth Amendments.[2] The Third Circuit in *Reyes v. Chinnici* opined that *de*

---

[2] The Third Circuit previously advised that trial courts may find useful guidance in Fourth Amendment excessive-force cases in applying the Fourteenth Amendment standard; however, the Court did not make a similar assertion about Eighth Amendment jurisprudence. *Jacobs*, 8 F.4th 187, 195, n.6 (3d Cir. 2021).

5

*minimis* force in the context of the Eighth Amendment entails force which is "so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously or sadistically." 54 Fed.App'x 44, 48 (3d Cir. 2002). Our Supreme Court made clear in *Kingsley* that the malicious and sadistic standard did not apply to claims involving pretrial detainees, and therefore it is safe to assume that this standard for *de minimis* force would not apply to pretrial detainees. While the *Reyes* Court's explanation is not applicable, it may still be viewed as instructive if we substitute the maliciously and sadistically standard for a more appropriate alternative, such as "with the intent to punish."[3] Punishment may consist of actions taken with the express intent to punish, as well as actions that are not rationally related to any nonpunitive governmental purpose or excessive in relation to that purpose. *Kingsley*, 576 U.S. at 398. Applied to the situation at hand, the Court must determine whether Officer Smythe's use of force was so minor that no reasonable person could conclude that he did so with the intent to harm Plaintiff without legitimate purpose, which it clearly was not.

It is important to note the practical differences between the two standards articulated above. The Eighth Amendment *de minimis* standard would excuse use of force which did not result in significant injury where it was clear that the use of force was not motivated by malice or sadism. Stated differently, this standard excuses an officer's mistaken belief that use of force was warranted, or even arbitrary use of force, as long as the use of force does not result in serious injury. The Fourteenth Amendment *de minimis* standard would not offer the same protection for arbitrary use of force, such as Officer Smythe's use of force against Mr. Mack.

The Fourth Amendment standard with regard to *de minimis* force is far more instructive. The Fourth Amendment does not protect against *de minimis* use of force by officers effectuating

---

[3] "The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)(quotations omitted).

6

*lawful arrests*, given that some physical coercion or threat thereof tends to be necessary to effectuate an arrest. *See*, *Nolin v. Isbell*, 207 F.3d 1253, 1258 (11th Cir. 2000); *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, in the context of the Fourth Amendment, the *de minimis* force doctrine does not apply where an arrest is unsupported by probable cause, meaning that *any* use of force would be inappropriate. *Nolin*, 207 F.3d. at 1258. Applying these principles to Fourteenth Amendment protection afforded to pretrial detainees, the *de minimis* force doctrine would only apply in instances where a corrections officer has lawful authority to physically engage with a detainee. Officer Smythe had no reason to physically touch Mr. Mack and, therefore, the *de minimis* force doctrine does not apply.

Finally, Defendants' reliance on the Third Circuit's non-precedential opinion in *Washam v. Klopotoswki*, 403 Fed.Appx. 636 (2010), is misplaced. First and foremost, *Washam* involved a motion for <u>summary judgment</u>, not dismissal for failure to state a claim. *Id*. at 637. Further, *Washam* involved a convicted prisoner and therefore would not have applied the appropriate *de minimis* standard. The Court permitted *Washam* the opportunity to engage in the discovery process in order to produce evidence of malicious, sadistic, or discriminatory intent; however, when he failed to do so, the Court dismissed the use of force as *de minimis*. Even assuming *arguendo* that the Eighth Amendment standard applied to Plaintiff's claims, *Washam* still would not call for dismissal of his claims at such an early stage. Plaintiff must be afforded the opportunity to engage in discovery, which would afford him the opportunity to obtain the videotape of the incident in Defendants' exclusive control and demonstrate to the Court that the use of force was not *de minimis*.

### III.     Plaintiff Properly Pled a *Monell* Claim with regard to his RHU Status.

Defendants next argue that Plaintiff's Complaint failed to properly assert claims under the *Monell* doctrine related to Plaintiff's placement on restricted housing unit ("RHU") status. First, Defendants contend that Plaintiff's placement on RHU status without legitimate justification or due process did not constitute a due process violation, making it impossible to state a claim for *Monell* liability. Defendant's arguments once again appear to confuse the standard applicable to Plaintiff, a pretrial detainee presumed to be innocent, with that of a convicted prisoner.

While "pretrial detainees do not have a liberty interest in being confined in the general population, they do have a liberty interest in not being detained indefinitely in [restrictive housing] without explanation or review of their confinement." *Singleton v. Superintendent Camp Hill SCI*, 747 Fed. App'x. 89, 92 (3d Cir. 2018)(citation omitted). The Due Process Clause prohibits the punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law. *Stevenson v. Carroll*, 495 F.3d 62, 67 (2007), *cert. denied*, 552 U.S. 1180 (2008)(quotations omitted). A particular action or measure "amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Id*. (quotations omitted).

Contrary to Defendants assertion otherwise, applicable federal case law does not require the dismissal of a pretrial detainee's due process claims absent an allegation that he spent a considerable amount of time in segregation. *See*, *Parkell v. Morgan*, 682 Fed. App'x 155, 158 (2017)(finding that a pretrial detainee stated a proper claim for due process violation when he was twice confined to his cell and denied all privileges for twenty-four house without explanation).

8

All of the case law cited by Defendants, once again, involves convicted prisoners and not pretrial detainees.[4]

Here, Defendants placed Mr. Mack in restrictive housing and denied him privileges to which he would otherwise be entitled without any reasonable explanation. Bucks County instead informed Plaintiff that it was the policy of the jail to arbitrarily place any inmates involved in a use of force incident in restrictive housing, regardless of fault, until the matter could be resolved. Mr. Mack found himself viciously attacked by a guard without provocation, injured, denied appropriate medical treatment, and then thrown into restrictive housing and deprived of all privileges. He could not contact his wife to let her know what happened or make any other contact with the outside world to report Officer Smythe's conduct. Bucks County did not similarly send Officer Smythe home or keep him segregated from Mr. Mack pending review of the interaction, demonstrating that Bucks County acted without legitimate purpose in segregating Mr. Mack from the general population. In fact, Bucks County allowed Officer Smythe to go to Mr. Mack's cell that same evening to intimidate Plaintiff in an effort to prevent him from pursuing this matter.

Defendants next argue that regardless of whether he is able to state a claim for due process violation, Plaintiff failed to establish that the corrections officers acted in accordance with a policy, procedure, or custom either affirmatively issued or acquiesced to by a final policymaker. While a municipality may not be held liable for the conduct of its employees under a theory of *respondeat superior*, a government entity may be held liable for constitutional injuries "when they result from the implementation or execution of an official policy, regulation, or decision adopted by it or

---

[4] The only arguable exception would be *Quiero v. Ott*, 799 Fed. App'x 144 (3d Cir. 2020), which declined to reach the issue of whether the defendant was a pretrial detainee or a convicted prisoner given that he was afforded procedural due process. *Quiero*, however, also concerned an appeal of an order granting summary judgment, not a dismissal for failure to state a claim. Another case cited by Defendants, *Burke v. Crowe*, may appear at first glance to concern a pretrial detainee; however, the opinion makes clear via footnote that the defendant was a convicted prisoner at the time of his alleged punishment. 2020 WL 42758, *3, n.3 (E.D.Pa. Jan. 3, 2020).

informally adopted by custom." *Henderson v. Matthews*, 556 F.Supp.3d 531, 534-35 (E.D.Pa. 2020). A municipal policy refers to the "decisions of a municipality's duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *A. v. Nutter*, 737 F.Supp.2d 341, 361 (E.D.Pa. 2010)(quotations omitted). By contrast, a municipal custom may be "a practice that has not been formally approved, but is so widespread as to have the force of law." *Id*. (quotations omitted).

Defendants are correct that Plaintiff may not simply make bald assertions regarding the existence of a policy or custom in order to state a *Monell* claim; however, that is not the case here. Plaintiff stated in his Amended Complaint that Sergeant O'Donnell, a supervising officer of the Bucks County Correctional Facility, *explicitly* told him it was the facility's protocol following a use of force incident to place the involved inmate on RHU status without any individualized assessment. *See*, Am. Comp. ¶23. Stated differently, if a correction's officer uses force against an inmate, regardless of whether the officer had lawful authority to do so, the inmate will be punished and placed in solitary confinement. Defendants suggest that because Plaintiff did not name a specific final policymaker responsible for implementing the unconstitutional protocol, his claims must be dismissed. However, this Court has previously dismissed this argument on the grounds that it places an undue burden on a plaintiff at this early stage. *See*, *Jackson v. Corizon Health, Inc.*, 2018 WL 3438756, *5 (July 17, 2018)(holding that the failure to name a final policymaker was not fatal to plaintiff's claims, given that at this stage a prisoner-plaintiff cannot be expected to know which entity formulated each policy); *Ramos-Vazquez*, 2010 WL 3855546, *9 (Sept. 30, 2010)(same); *Rodriguez v. City of Philadelphia*, 2015 WL 4461785, *4 (July 21, 2015)(same). Sergeant O'Donnell, a supervisory officer of the Bucks County Correctional Facility, plainly told

Plaintiff that this was the facility's standard procedure, which is more than sufficient to survive the instant motion.

**IV.    Plaintiff's Complaint asserts an adequate Failure to Train claim against Defendants.**

Defendants next assert that Plaintiff's Amended Complaint fails to set forth a pattern of similar constitutional violations sufficient to place Bucks County on notice of the deficiency of its training program. As an initial matter, with respect to failure to train claims, this Court has regularly declined to dismiss such claims without affording the plaintiff the opportunity to adduce evidence through discovery. *See*, *Keahey v. Bethel Tp., Pa.*, 2012 WL 478936, *7 (E.D.Pa. Feb. 15, 2012); *Dix v. City of Philadelphia*, 2015 WL 4624248, *9 (E.D.Pa. Aug. 3, 2015); *Ford v. City of Philadelphia*, 2012 WL 3030161, *7 (E.D.Pa. July 24, 2012).

Moreover, Plaintiff sets forth in the Amended Complaint two other recent federal lawsuits filed against Bucks County alleging inadequate use of force training and states that Plaintiff witnessed numerous instances in which Bucks County correctional personnel used excessive force against detainees in response to relatively minor disciplinary infractions. Defendants attempted to categorize the two recent lawsuits as "isolated" incidents; however, these are simply two incidents which are currently in the public eye. As noted in the Amended Complaint, Plaintiff witnessed numerous other incidents involving excessive force, these two lawsuits merely lend credibility to his assertion. Defendants further contend that the recent lawsuits should not be considered because they involved individuals experiencing mental health episodes. Should these suits have alleged force which would have been appropriate if used against the general population, but inappropriate against a mentally ill detainee, this argument might have carried some weight; however, the force alleged would have been inappropriate regardless. For example, Mubarak Alexander alleged in his complaint that several Bucks County Correctional Officers repeatedly punched, kicked,

11

elbowed, and kneed him causing significant physical injury while he was restrained to a chair. *Alexander v. Bucks County*, 2023 WL 3229928, *1 (E.D.Pa. May 2, 2023). Simply because Mr. Alexander may have been experiencing mental health issues does not mean that these serious allegations, if proven, do not expose grievous holes in Bucks County's use of force training.

### V. The Court appropriately retains supplemental jurisdiction.

Defendants finally argue that since there is no underlying constitutional violation, this Court should decline to exercise supplemental jurisdiction. As set forth in the preceding sections, Plaintiff sufficiently alleged several constitutional violations and therefore Defendants' arguments with respect to supplemental jurisdiction are moot.

### CONCLUSION

For the reasons set forth above, Plaintiff respectfully submits before this Honorable Court that Defendants have failed to meet their burden of establishing that Plaintiff's Amended Complaint fails to set forth claims upon which relief may be granted. Should the Court be disinclined to deny Defendants' motion on the papers, Plaintiff respectfully requests oral argument.

Respectfully Submitted,

Date: May 1, 2024       By:    ___*/s/ Bruce L. Castor, Jr.*_____
                                Bruce L. Castor, Jr.
                                I.D. No. 46370
                                Kaitlin C. McCaffrey
                                I.D. No. 329960
                                Attorneys for Plaintiffs
                                1219 Spruce Street
                                Philadelphia, PA 19107
                                P: (215) 546-1000
                                F: (215) 546-8529
                                E: bcastor@mtvlaw.com