IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| ANTHONY MACK,<br><br>Plaintiff,<br><br>v.<br><br>BUCKS COUNTY and OFFICER SMYTHE,<br><br>Defendants. | CIVIL ACTION<br>NO. 23-4386 |

**Slomsky, J.**                                                    **November 27, 2024**

**I.    INTRODUCTION** .................................................................................................. 3

**II.   BACKGROUND** ................................................................................................... 3

  A.  Defendants' Motion to Dismiss the Amended Complaint ................................. 5

  B.  Plaintiff's Opposition to Defendants' Motion to Dismiss................................. 6

**III.  STANDARD OF REVIEW**................................................................................... 7

**IV.   ANALYSIS**.......................................................................................................... 8

  A.  Defendants' Motion to Dismiss Counts One and Four, the Excessive
      Force and State Law Claims against Officer Phillip Smythe,
      Will Be Denied.................................................................................................. 9

    1.  The Objective Reasonableness Standard of the Fourteenth Amendment
        Applies to Pre-Trial Detainees Claiming Excessive Force ........................... 9

    2.  Excessive Force Standard ............................................................................11

    3.  The Use of Force by Officer Smythe Was Excessive and Not
        Objectively Reasonable ...............................................................................11

    4.  The State Law Claim of Assault and Battery.............................................. 13

   a. Assault ................................................................................................ 14

   b. Battery ................................................................................................ 14

 B. Defendants' Motion to Dismiss Counts Two and Three, the <u>Monell</u>
   Claims, Will Be Granted ........................................................................... 15

  1. Count Two Will Be Dismissed ................................................................ 16

   a. Plaintiff Has Alleged a Deprivation of his Due
    Process Rights ............................................................................... 16

   b. Count Two Will Be Dismissed Because Plaintiff Has Not
    Established a Viable Custom or Policy Under <u>Monell</u> ......................... 19

    i. Plaintiff Does Not Allege Any Bucks County Policy of Placing
     Detainees on Restricted Housing Unit Status Without a Hearing........................... 20

    ii. Plaintiff Does Not Allege Any Bucks County Custom of Placing
     Detainees on Restricted Housing Unit Status Without a Hearing........................... 21

    iii. Plaintiff Has Not Identified a Final Policymaker ..................................... 23

  2. Defendants' Motion to Dismiss Count Three, Failure to Train,
   Will Be Granted Because Plaintiff Has Not Shown that Bucks County
   Was Deliberately Indifferent to the Use of Excessive Force by Untrained
   Correctional Officers ................................................................................ 24

**V. CONCLUSION** ................................................................................................ 29

## I.    INTRODUCTION

Plaintiff Anthony Mack ("Plaintiff") filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Bucks County, a municipality under the Commonwealth of Pennsylvania, and Officer Phillip Smythe ("Officer Smythe"), a correctional officer at Bucks County Correctional Facility (collectively, "Defendants").  Before the Court is Defendants' Motion to Dismiss the Amended Complaint.  (Doc. No. 13.)  For the following reasons, Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 13) will be granted in part and denied in part.

## II.    BACKGROUND

### A.    Factual Background

On April 4, 2024, Plaintiff filed an Amended Complaint.  (Doc. No. 11.)  In this Complaint, he asserts the following claims against Officer Smythe:  (1) use of excessive force in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 (Count One), and (2) assault and battery in violation of Pennsylvania law (Count Four).  (Id. at 5-6, 10.)  Against Bucks County, Plaintiff asserts two Monell claims under 42 U.S.C. § 1983:  (1) unconstitutional policy, practice or custom (Count Two), and (2) failure to train (Count Three).  (Id. at 6-10.)

Specifically, Plaintiff alleges that on January 14, 2023, while he was a pre-trial detainee at Bucks County Correctional Facility, he asked Officer Smythe whether he could replace his tray of cold food for a hot tray.[1]  (Id. at ¶ 9.)  Officer Smythe responded that he could either throw his tray away or "sit down."  (Id. at ¶ 11.)  When Plaintiff asked to speak to the sergeant on duty, Officer Smythe told him no, and then assaulted Plaintiff by smacking the food tray out of his hands and tackling him onto the floor.  (Id.  at ¶¶ 11-13.)  Plaintiff describes the "tackle" as follows:

---

[1] At the motion to dismiss stage, the allegations in the Amended Complaint are considered in the light most favorable to Plaintiff.

Officer Smythe placed both of his arms around Plaintiff, lifted him off the ground, and slammed him onto the concrete floor. (Id. at ¶ 14.) Plaintiff describes Officer Smythe as being more than thirty (30) years older and more physically fit than him. (Id. at 13.) He alleges that Officer Smythe was wearing a large radio that slammed into Plaintiff's chest along with the force of Smythe's body weight. (Id. at ¶ 14.) He claims that Officer Smythe next yanked his arms and placed him in handcuffs. (Id. at ¶ 17.) Plaintiff felt a "pop" in his chest and sustained chest and hip pain as a result of the altercation, including a baseball size mass on his right hip. (Id. at ¶¶ 15, 22, 26, 27.) He also alleges that this interaction was captured on video camera at the Bucks County Correctional Facility. (Id. at ¶ 18.) A bystander officer then contacted Sergeant O'Donnell who arrived on scene. (Id. at ¶ 20.)

Plaintiff was escorted by Sergeant O'Donnell to the jail's infirmary where he was examined and found to be "not injured" despite his complaints of pain. (Id. at ¶ 22.) He was transported back to his cell in D-Block where he was confined to Restrictive Housing Unit ("RHU") "status," kept in isolation and denied privileges. (Id. at ¶ 23.) He alleges that he was told by Sergeant O'Donnell that when there is use of force against an inmate, Bucks County's protocol was to place the inmate on RHU status "automatically without any further review at that time." (Id.) He also claims that Officer Smythe later approached his cell and asked "whether he intended to make any trouble regarding their earlier altercation." (Id. at ¶ 24.) As a result of the interaction, Plaintiff spent several days on RHU status "without any explanation for his punishment or opportunity to plead his case before a hearing officer." (Id. at ¶ 25.)

In Count One of the Amended Complaint, Plaintiff alleges that Officer Smythe used excessive force in violation of the Fourteenth Amendment by slamming him onto the ground and causing him substantial harm, including physical pain, severe emotional distress, mental anguish,

humiliation, and disfigurement.  (Id. at ¶¶ 30-34.)   In Count Four, Plaintiff claims that Officer Smythe unreasonably assaulted him in violation of state law causing him to suffer physical and emotional injuries.  (Id. at ¶¶ 61-62.)

In Count Two, Plaintiff alleges that Bucks County kept him on RHU status for several days without the opportunity for a hearing.  (Id. at ¶ 39.)  He contends that Bucks County "implemented a policy, practice, and/or custom requiring all inmates involved in a use of force incident with an officer to be placed on RHU status, regardless of attendant circumstances, until the matter was heard by a hearing officer."  (Id. at ¶ 40.)  He further claims that he was confined to RHU status without any due process.  (Id. at ¶ 44.)

In Count Three, Plaintiff alleges that Bucks County failed to adequately train its correctional officers, including Officer Smythe, regarding the use and degree of force against an inmate.  (Id. at ¶¶ 51, 55.)  He notes that Bucks County has been involved in several lawsuits involving excessive force, including claims brought by Mubarak Alexander and the family of Kimberly Stringer.[2]  (Id. at ¶ 52.)  Plaintiff concedes that these cases involve inmates suffering from mental health issues, but relies on them because they portray "systemic deficiencies within Bucks County's understanding with regard to appropriate use of force."  (Id.)

### B.    Defendants' Motion to Dismiss the Amended Complaint

On April 17, 2024, Defendants filed a Motion to Dismiss the Amended Complaint (Doc. No. 13.)  First, they assert that Plaintiff has still not alleged a viable excessive force claim because, at best, Plaintiff describes a de minimus use of force event.  (Id. at 5-6.)  Second, Plaintiff's Monell

---

[2] As discussed further below, Alexander and Stringer are cases brought by pre-trial detainees who filed suit against Bucks County Correctional Facility and its officers also alleging, in relevant part, failure to train under Monell.  See Alexander v. Bucks Cnty., No. 21-CV-4633-KSM, 2023 WL 3229928 (E.D. Pa. May 2, 2023); Stringer v. Cnty. of Bucks, No. CV 22-1525, 2023 WL 2163871 (E.D. Pa. Feb. 22, 2023).

claim fails because Plaintiff's three (3) days spent on RHU status is insufficient to create a protected liberty interest under the Fourteenth Amendment, and Plaintiff fails to allege the identity of any final policymaker that acquiesced in the alleged unconstitutional policy and/or custom.  (Id. at 9-12.)  Third, Plaintiff's failure to train allegation does not show that Bucks County was deliberately indifferent to any inadequacy regarding the County's use of force training.  (Id. at 12-13.)  They further maintain that the Amended Complaint "contains nothing more than boilerplate recitation of the elements [of a Monell claim], attempting to transform a single incident into a facility-wide training deficiency and relying upon irrelevant, isolated incidents."  (Id. at 3.)  Lastly, they argue that because the Amended Complaint contains unsustainable federal claims, this Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law assault and battery claim against Officer Smythe.  (Id. at 15-16.)

### C. Plaintiff's Opposition to Defendants' Motion to Dismiss

On May 1, 2024, Plaintiff filed a Response in Opposition to Defendants' Motion to Dismiss.  (Doc. No. 14.)  Regarding the excessive force claim, he argues Officer Smythe tackled him onto the concrete floor without any justification.  (Id. at 3.)  He maintains that any force should be found unreasonable because Plaintiff did not disobey an order or instruction warranting force.  (Id. at 5.)

Regarding the Monell claims, Plaintiff submits that he was placed on RHU status without legitimate justification or due process.  (Id. at 9.)  He avers that Sergeant O'Donnell told him Bucks County has a policy of arbitrarily placing inmates involved in a use of force incident in restrictive housing, regardless of fault, until the matter could be resolved.  (Id.)  Moreover, Bucks County never afforded him the opportunity to plead his case before a hearing officer during the three (3) days he spent in segregation.  (Id. at 9-10.)  Further, Plaintiff argues that he specifically named as the policymaker Sergeant O'Donnell, a supervising officer at Bucks County Correctional Facility,

who told Plaintiff that it was protocol to place the involved inmate on RHU status after a use of force incident.  (Id. at 11.)  Alternatively, he suggests that if Sergeant O'Donnell is not considered to be a policymaker, his failure to name a policymaker does not defeat a Monell claim at the motion to dismiss stage.  (Id. (citing cases).)

Regarding the failure to train claim, the Amended Complaint refers to two (2) other recent federal lawsuits filed against Bucks County alleging inadequate training on the use of force.  (Id. at 12.)  Lastly, Plaintiff avers he witnessed numerous incidents where excessive force was used against detainees in response to relatively minor disciplinary infractions by employees of Bucks County Correctional Facility.  (Id.)

## III.    STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal, it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, n.27 (3d Cir. 2010)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit

must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.    ANALYSIS

In his Amended Complaint, Plaintiff asserts Fourteenth Amendment claims against Defendants for (1) use of excessive force, (2) use of an unconstitutional policy, practice or custom, and (3) failing to train officers on the use of force against inmates.[3] Such claims may be brought under the civil rights statute, 42 U.S.C. § 1983, which provides a remedy for deprivation of a right established under the Constitution and federal law when the deprivation is done by a state

---

[3] Plaintiff also brings a state law claim for assault and battery against Defendant Smythe.

officer.  Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003).  Section 1983 provides in

pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the United
> States . . . to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress, except that in any action brought
> against a judicial officer for an act or omission taken in such officer's judicial
> capacity, injunctive relief shall not be granted unless a declaratory decree was
> violated or declaratory relief was unavailable.

42 U.S.C. § 1983.  Thus, in order to properly plead a constitutional claim under Section 1983,

Plaintiff must allege (1) conduct by a person, (2) who acted under color of state law, (3) which

caused a deprivation of a federally protected right.  West v. Atkins, 487 U.S. 42, 48 (1988).

### A. Defendants' Motion to Dismiss Counts One and Four, the Excessive Force and State Law Claims against Officer Phillip Smythe, Will Be Denied

Defendants assert that the excessive force claim against Defendant Officer Smythe in

Count One and the assault and battery claim in Count Four of Plaintiff's Amended Complaint

should be dismissed. (Doc. No. 13 at 5-6.) Defendant Smythe was acting in his individual capacity

as a corrections officer at Bucks County Correctional Facility during the incidents alleged in the

Amended Complaint.  Thus, the first two prongs of a Section 1983 claim are satisfied.  He was a

state actor acting under color of state law.  Only the third prong is in dispute.  Moreover, the

sufficiency of the state law claim asserted in Count Four for assault and battery is also in dispute.

### 1. The Objective Reasonableness Standard of the Fourteenth Amendment Applies to Pre-Trial Detainees Claiming Excessive Force

To address an excessive use of force claim brought under Section 1983, the Court must

first identify the constitutional right allegedly infringed by the use of force.  Graham v.

Connor, 490 U.S. 386, 394 (1989).  There are two primary sources of constitutional protection

9

from abusive government conduct: (1) the Fourth Amendment's prohibition on unreasonable searches and seizures, and (2) the Eighth Amendment's ban on cruel and unusual punishments. Id. The Fourth Amendment is generally applied in cases involving an arrest or investigatory stop of a free citizen, while the Eighth Amendment is applied to convicted prisoners. Id. In this case, the excessive force claim arises in the context of a pre-trial detainee. Courts analyze these claims under the Due Process Clause of the Fourteenth Amendment.[4] See Parkell v. Morgan, 682 F. App'x 155, 157 (3d Cir. 2017) ("Pretrial detainees, who are not sentenced inmates, are protected from 'punishment' by the Due Process Clause of the Fourteenth Amendment"); Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) ("[T]he Due Process Clause of the Fourteenth Amendment [] protects pretrial detainees like [defendant].")

Like the Fourth Amendment, the Fourteenth Amendment utilizes an objective reasonableness standard when analyzing excessive force claims. See id. (finding that that the Fourteenth Amendment, like the Fourth Amendment, exclusively employs an objective-reasonableness standard); see also Lombardo v. City of St. Louis, Missouri, 594 U.S. 464, n.2 (2021) ("[I]n analyzing an excessive force claim [against a pre-trial detainee], a court must determine whether the force was objectively unreasonable in light of the facts and circumstances of each particular case.") (internal citations omitted.); Kingsley v. Hendrickson, 576 U.S. 389, 402 (2015) ("[A]n objective standard is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment.")

---

[4] The Fourteenth Amendment reads in relevant part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1.

### 2. Excessive Force Standard

In determining whether a defendant's acts constituted excessive force under the objective

reasonableness standard, the force "must be judged from the perspective of a reasonable officer on

the scene, rather than with the 20/20 vision of hindsight." <u>Graham</u>, 490 U.S. at 396. The Supreme

Court has explained that:

> Not every push or shove, even if it may later seem unnecessary in the peace of a
> judge's chambers, . . . violates the Fourth Amendment. The calculus of
> reasonableness must embody allowance for the fact that police officers are often
> forced to make split-second judgments-in circumstances that are tense, uncertain,
> and rapidly evolving-about the amount of force that is necessary in a particular
> situation.

<u>Id.</u> at 396–97 (internal citation omitted). The alleged force used must rise above a <u>de</u> <u>minimus</u>

level. <u>See</u> <u>Brooks v. Kyler</u>, 204 F.3d 102, 107 (3d Cir. 2000). Factors to be considered in

determining whether a defendant used objectively reasonable force include:

> the relationship between the need for the use of force and the amount of force used;
> the extent of the plaintiff's injury; any effort made by the officer to temper or to
> limit the amount of force; the severity of the security problem at issue; the threat
> reasonably perceived by the officer; and whether the plaintiff was actively
> resisting.

<u>Kingsley</u>, 576 U.S. at 397.

### 3. The Use of Force by Officer Smythe Was Excessive and Not Objectively Reasonable

Here, as described above, Plaintiff's claim is assessed under an objective reasonable

standard because he was a pretrial detainee at Bucks County Correctional Facility at the time of

the incident. Plaintiff alleges that Defendant Smythe, after smacking his food tray out of his hand,

forcefully tackled Plaintiff and slammed him onto the concrete floor. (Doc. No. 11 at ¶ 13.) The

Complaint also states that Officer Smythe crushed Plaintiff with his full body weight and Smythe's

radio landed on Plaintiff's chest causing him injury. (<u>Id.</u> at ¶ 14.) Plaintiff asserts that he suffered

chest and hip pain as a result of the interaction, including a popping sensation in his chest and a

baseball size mass on his right hip.  (Id. at ¶¶ 22, 27.)  He submits that Defendant Smythe is more

than thirty (30) years older, more physically fit than Plaintiff, and Plaintiff did not show any signs

of aggression prior to the incident.  (Id. at ¶ 16.)  Rather, he maintains that Officer Smythe showed

obvious signs of hostility and aggression, and Plaintiff attempted to avoid any further interaction

before Smythe became physical with him.  (Id. at ¶ 12.)

As noted above, not every push or shove will rise to the level of a constitutional violation.

But here, Plaintiff has alleged more than mere pushing and shoving.  He alleges that he was tackled

and slammed to the ground by Defendant Smythe after a discussion about replacing his cold food

for a new tray.  Thus, at the motion to dismiss stage, and in viewing the facts in a light most

favorable to the Plaintiff, the totality of the circumstances alleged is enough to satisfy that Plaintiff

has established a plausible excessive use of force claim against Officer Smythe.

Defendants rely on Bressi v. Brennen in arguing that an excessive force claim may be

dismissed based on a de minimus amount of force used.  No. 4:17-CV-01742, 2019 WL 5092529

(M.D. Pa. Aug. 5, 2019), report and recommendation adopted, No. 4:17-CV-01742, 2019 WL

4386897 (M.D. Pa. Sept. 13, 2019), aff'd as modified, 823 F. App'x 116 (3d Cir. 2020).  In Bressi,

the plaintiff alleged that an officer rapped his hands around plaintiff's neck and slammed him up

against the concrete cinder block wall.  Id. at *1.  Bressi's excessive force claim, however, was

dismissed because he did not allege an injury from his interaction with defendants:

> Here, Bressi alleges merely that [defendant] grabbed him by the neck and pushed
> him against a wall.  He does not allege any injury, much less one of any
> significance.  Standing alone, this is simply insufficient to support a plausible claim
> that [defendant] violated Bressi's due process rights as a pretrial detainee to be free
> from excessive force.

Id. at *3.  Unlike Bressi, Plaintiff asserts chest and hip injuries as a result of his altercation with

Officer Smythe.

Moreover, Defendants cite <u>Washam v. Kloptoski</u>, where the use of force included the defendant "knocking books out of the [plaintiff's] hands, slamming [plaintiff] on the ground, and handcuffing him." 403 F. App'x 636, 640 (3d. Cir. 2010). This amount of force was found by the court to be <u>de minimus</u>. <u>Id.</u> However, as Defendant Smythe concedes, the plaintiff's case in <u>Washam</u> was dismissed at the summary judgment stage, not on a motion to dismiss. <u>See id.</u> Moreover, Washam was an incarcerated individual, not a pretrial detainee, and the court analyzed Washam's excessive force claim under the Eighth Amendment's cruel and unusual punishment standard, not the Fourth and Fourteenth Amendments' objective reasonableness standard. <u>Id.</u> ("[N]o reasonable jury could find that the de minimis force utilized by [defendant] was 'of a sort repugnant to the conscience of mankind' in violation of the Eighth Amendment.")[5]

Therefore, Plaintiff has sufficiently pled an excessive force claim under § 1983 in violation of the Fourteenth Amendment.

### 4. Plaintiff Has Sufficiently Alleged a State Law Claim of Assault and Battery Against Officer Smythe

In Count Four, Plaintiff alleges a state law claim of assault and battery against Defendant Smythe for the same incident described in Plaintiff's § 1983 excessive force claim. (<u>See</u> Doc. No. 11 at 10.) Federal courts with original jurisdiction over a federal claim have supplemental jurisdiction over state claims that form "part of the same case or controversy." 28 U.S.C. § 1367(a). Because Plaintiff's Fourteenth Amendment claim shall remain, the Court will continue to exercise supplemental jurisdiction over his state law claim against Defendant Smythe.

---

[5] While Defendant acknowledges in his Motion to Dismiss the Amended Complaint (Doc. No. 13) that the appropriate analysis falls under the Fourteenth Amendment's objective reasonableness standard, he refers to cases that use the Eight Amendment's cruel and unusual punishment standard. <u>See e.g.</u>, <u>Washam v. Kloptoski</u>, 403 F. App'x 636, 640 (3d. Cir. 2010); <u>Green v. White</u>, No. 20-CV-4211, 2021 WL 1979434, at *3 (E.D. Pa. May 18, 2021); <u>Barber v. Grow</u>, 929 F. Supp. 820, 822-823 (E.D. Pa. 1996).

### a.    Assault

Under Pennsylvania law, a plaintiff alleges assault when the defendant intentionally caused an imminent apprehension of a harmful or offensive bodily contact with plaintiff.  Lakits v. York, 258 F.Supp. 2d 401, 407 (E.D. Pa. 2003) (internal citations omitted); RESTATEMENT (SECOND) OF TORTS § 21.

Here, Plaintiff alleges that Officer Smythe tackled him to the ground after refusing to allow Plaintiff to replace his cold tray of food for a new hot tray.  (Doc. No. 11 at ¶ 9.)  And when Plaintiff asked to speak with a sergeant, Officer Smythe "smack[ed] Mr. Mack's food tray out of his hands to the floor and forcefully tackle[d] Plaintiff down onto the concrete floor of the dining hall."  (Id. at ¶ 13.)  Thus, Plaintiff has sufficiently alleged an assault by Defendant Officer Smythe because, when viewing the facts alleged in the Amended Complaint in the light most favorable to Plaintiff, Defendant intentionally caused harmful and offensive contact with Plaintiff.

### b.    Battery

To support a claim for battery in Pennsylvania, a plaintiff must show that:  (1) the defendant "[acted] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (2) an offensive contact with the person of the other directly or indirectly results."  RESTATEMENT (SECOND) OF TORTS § 18.  Some physical contact between the defendant and the plaintiff must occur.  Id.

Again, Plaintiff has alleged that Officer Smythe tackled him to the ground causing chest and hip injuries.  As such, at the motion to dismiss stage, Plaintiff has sufficiently alleged battery under Pennsylvania law.

Therefore, Defendants' Motion to Dismiss Counts One and Four of the Amended Complaint will be denied.

B.     **Defendants' Motion to Dismiss Counts Two and Three,
the <u>Monell</u> Claims, Will Be Granted**

In Counts Two and Three, Plaintiff brings two <u>Monell</u> claims:  (1) Defendant Bucks County
had an unlawful policy or custom of denying inmates a hearing after placing them on restricted
housing unit ("RHU") status, in violation of the due process clause of the Fourteenth Amendment
(Count Two), and (2) Bucks County was deliberately indifferent "to the rights and safety of its
citizens, [and] failed to ascertain whether its officers were adequately trained with regard to the
appropriate use of force" (Count Three).  (Doc. No. 11 at ¶¶ 39, 49.)  The <u>Monell</u> claims are
discussed seriatim.

In the Motion to Dismiss, Defendant Bucks County argues that Plaintiff failed to establish
any Fourteenth Amendment due process violations based on a policy and/or custom or failure to
train, and thus this claim should be dismissed under <u>Monell v. Dep't of Social Services</u>, 436 U.S.
658 (1978).  (Doc. No. 13 at 10.)

In <u>Monell</u>, the United States Supreme Court held that municipal entities can be subject
to Section 1983 liability in limited circumstances. <u>Id.</u> at 690.  The gravamen of <u>Monell</u> and its
progeny is that "recovery from a municipality is limited to acts that are, properly speaking, acts
'of the municipality' – that is, acts which the municipality has officially sanctioned or
ordered." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986).  In other words, the
constitutional deprivation must have had its origin in the policy or custom of the municipality, and
liability based on the actions of city officials exists only where it can be shown that the officials
acted in accordance with that policy or custom.  <u>Monell</u>, 436 U.S. at 694.

Accordingly, municipalities cannot be held liable under Section 1983 for the acts of its
employees based on the doctrine of respondeat superior or for other forms of vicarious liability.
<u>Monell</u>, 436 U.S. at 692 (noting that the language of Section 1983 "cannot easily be read to impose

liability vicariously on government bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor"); see also Reitz v. County of Bucks, 125 F.3d 139, 146 (3d Cir. 1997) ("[L]iability simply cannot be predicated upon a showing of respondeat superior.")

Moreover, allegations that simply paraphrase the standard for municipal liability are too vague and generalized to support a claim against the municipality.    See, e.g., Szerensci v. Shimshock, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under Monell.") (citing cases).

Thus, under Monell, to state a Section 1983 claim against a municipality, a plaintiff must establish that (1) a constitutionally protected right has been violated, and (2) the alleged violation resulted from a municipal policy, custom, or deliberate indifference to a violation of a constitutional right.  Monell, 436 U.S. at 694-95, 98; see also Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).  A failure to train claim arises under the claim for deliberate indifference.

### 1.   Count Two Will Be Dismissed

In Count Two, Plaintiff asserts that Bucks County implemented a policy or custom requiring inmates involved in a use of force incident to be automatically placed on restrictive housing unit ("RHU") status regardless of any attendant circumstances.  Plaintiff also avers that he was never afforded a hearing prior to being placed on RHU status, in violation of his due process rights under the Fourteenth Amendment.  (Id. at ¶¶ 39-43.)

### a.   Plaintiff Has Alleged a Deprivation of his Due Process Rights

Plaintiff contends that Bucks County deprives inmates, and specifically Plaintiff, of an opportunity to be heard before and while being placed on RHU status.  (Doc. No. 11 at ¶ 39.)  He

16

also contends that Bucks County denies inmates a hearing if the circumstances would reflect poorly on an officer working in the Bucks County jail.  (Id. at ¶ 41.)

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. "The core of due process is the right to notice and a meaningful opportunity to be heard."  LaChance v. Erickson, 522 U.S. 262, 266 (1998).  To allege a violation of procedural due process, a plaintiff must show that: "(1) Defendants deprived him of an individual liberty interest that is encompassed within the Fourteenth Amendment's protection, and (2) the procedures Defendants made available to him did not provide due process of law."  Steele v. Cicchi, 855 F.3d 494, 507 (3d Cir. 2017) (citations omitted).  "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action."  Wolff v. McDonnell, 418 U.S. 539, 560 (1974).  Specifically, in the context of transferring detainees to segregated housing, "[t]he degree of process required varies depending on the reason for the transfer, with greater process accorded to prisoners who are confined for disciplinary infractions than those moved for purely administrative reasons."  Stevenson v. Carroll, 495 F.3d 62, 70 (3d Cir. 2007).

Moreover, "[a]lthough pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in the [Special Housing Unit] without explanation or review of their confinement."  Id. at 69.  Pretrial detainees must be afforded an explanation or review of their confinement once placed on restrictive status.  As the court stated in May v. George W. Hill Corr. Facility:

> With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the

due process protections set forth in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974)." <u>Kanu</u>, 739 F. App'x at 116. Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence." <u>Id.</u> (citing <u>Wolff</u>, 418 U.S. at 563-66); <u>see also</u> <u>Stevenson v. Carroll</u>, 495 F.3d 62, 70 (3d Cir. 2007). "Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports." <u>Thomas v. McCoy</u>, 467 F. App'x 94, 97 (3d Cir. 2012) (<u>per curiam</u>).

No. 22-CV-5007, 2023 WL 5211620, at *5 (E.D. Pa. Aug. 14, 2023).

Here, Plaintiff's claim that he was denied a hearing after being placed on RHU status presents a sufficient Fourteenth Amendment due process violation. (<u>See</u> Doc. No. 11 at ¶¶ 39, 42.) He should have been afforded notice as to why he was placed on restricted housing status as well as a hearing so that he could adequately respond and present evidence as to why he believed he should not have been disciplined. Therefore, Plaintiff has sufficiently alleged a deprivation of a constitutional right to a hearing as a pre-trial detainee under the Fourteenth Amendment. Thus, he has satisfied the first element under <u>Monell</u>.

Defendants cite numerous cases in their Motion suggesting Plaintiff's minimal time spent on RHU status supports no constitutional violation. However, in those cases, the plaintiffs were eventually afforded review or a hearing.[6] <u>See, e.g.,</u> <u>Steele v. Cicchi</u>, 855 F.3d at 507 ("An inmate

---

[6] Defendants rely on cases such as <u>Griffin v. Vaughn</u>, 112 F.3d 703 (3d Cir 1997), <u>Burke v. Crowe</u>, 2020 WL 42758 (E.D. Pa. Jan 3, 2020), <u>Thomas v. Arias</u>, No. CIV.A. 06-CV-291, 2007 WL 210087 (E.D. Pa. Jan. 23, 2007), and <u>Thorpe v. Dohman</u>, 2004 WL 2397399 (E.D. Pa. 2004) to suggest that Plaintiff is not entitled to a hearing. However, the plaintiffs in those cases are incarcerated individuals. In those instances, courts refer to the standard set forth in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), which held that a liberty interest exists for a prisoner only when a prison disciplinary measure "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484. "The Court interpreted <u>Sandin</u>'s 'atypical and significant hardship' standard as 'what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.'" <u>Thorpe</u>, 2004 WL 2397399, at *3 (quoting <u>Griffin</u>, 112 F.3d at 706). This standard, however, is not applied to a pre-trial detainee. Indeed, the Supreme Court in <u>Sandin</u> emphasized the differences

18

must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation . . . So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.") (internal citations omitted); May, 2023 WL 5211620, at *5 ("[Plaintiff] availed himself of the available process by presenting his version of events at a disciplinary hearing before a hearing officer.  Because May has not plausibly alleged a denial of process, his due process claims will be dismissed.")  Plaintiff's Amended Complaint alleges he was never given a hearing.  (Doc. No. 11 at ¶ 39.)

Therefore, because Plaintiff claims he was not given a hearing for his time spent on RHU status, he has sufficiently alleged a violation of his due process rights.

### b. Count Two Will Be Dismissed Because Plaintiff Has Not Established a Viable Custom or Policy Under Monell

Because this Court finds that Plaintiff has alleged sufficient facts in his Amended Complaint that he suffered a violation of his due process rights, whether the alleged violation resulted from a municipal policy or custom is the next question.

As noted above, a plaintiff may bring a § 1983 claim for damages against a government entity only when the alleged unlawful action was taken pursuant to a policy or custom of the municipality, not when the action was an isolated act of an official.  Monell, 436 U.S. at 690-91. "[T]he action that is alleged to be unconstitutional [must] implement[ ] or execute[ ] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. . . . [or] pursuant to governmental 'custom' even though such a custom has not received

---

between pre-trial detainees and incarcerated prisoners, finding that the punishment of incarcerated prisoners serves different aims than those of pre-trial detainees.  Sandin, 515 U.S. at 485.  Rather, Sandin's purpose was to "effectuate[] prison management and prisoner rehabilitative goals."  Id.  Moreover, the plaintiffs in Griffin and Thorpe were eventually given a hearing.

formal approval through the body's official decision making channels."  Id.; see also Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989).  When lodging a Monell claim based on policy or custom, the complaint must sufficiently "link the alleged offending policies or customs to anyone. . . . who had policy-making authority." Rees v. Office of Children and Youth, 473 Fed. App'x 139, 143 (3d Cir. 2012).

Thus, Plaintiff's § 1983 claim against Defendant Bucks County is viable only if he claims that the correctional officers' actions were taken pursuant to an unlawful policy or custom of Bucks County.

> ### i.  Plaintiff Does Not Allege Any Bucks County Policy of Placing Detainees on Restricted Housing Unit Status Without a Hearing

Plaintiff has failed to allege a policy that shows Bucks County deprived inmates of the opportunity to be heard by a hearing officer after being placed on RHU status.

There are numerous ways a plaintiff can sufficiently allege the existence of a municipal policy.  For example, a plaintiff can cite the official policy.  See Monell supra.  "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality."  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997).  Alternatively, a policy "need not be passed by a legislative body, or even be in writing, to constitute an official policy for the purposes of § 1983."  Porter v. City of Phila., 975 F.3d 374, 383 (3d Cir. 2020).

Here, however, Plaintiff's bare-bone assertions of an alleged unlawful policy do not suffice to withstand a motion to dismiss.  He does not cite to any policy of the Bucks County Correctional Facility or provide additional details or circumstances where Bucks County carried out this alleged

policy.  He merely alleges that "Bucks County implemented a policy and/or custom requiring all inmates involved in a use of force incident with an officer to be placed on RHU status, regardless of attendant circumstances, until the matter was heard by a hearing officer."  (Doc. No. 13 at ¶ 40.) Without supporting facts, the Court does not find it plausible that Plaintiff has sufficiently pled that Bucks County has formulated or adopted a policy of preventing inmates from being afforded a hearing.  See Witt v. City of Vineland, No. CV2014678RMBKMW, 2021 WL 3465597, at *6 (D.N.J. Aug. 6, 2021) (finding no Monell claim where the plaintiff did not allege when policies were adopted, by whom, or any content of the alleged formal policies.)  And a claim of a single incident does not a provide sufficient basis to prove a policy.  Sanford v. City of Scranton, No. 3:06-CV-0739, 2006 WL 3242113, at *4 (M.D. Pa. Nov. 7, 2006).  Moreover, Plaintiff alleges Bucks County "engaged in a practice and/or custom of depriving inmates the opportunity to be heard by a hearing officer in situations where information may come to light through such a hearing that would negatively reflect on an officer or on the Bucks County Jail."  (Doc. No. 11 at ¶ 41.) But, again, he provides no support to bolster this claim.

Therefore, Plaintiff fails to identify with any specificity a policy in his Amended Complaint required to be asserted under Monell.

###### ii.    Plaintiff Does Not Allege Any Bucks County Custom of Placing Detainees on Restricted Housing Unit Status Without a Hearing

Nor has Plaintiff established a custom of Bucks County to deprive inmates the right to a hearing once placed on RHU status.

"[A]n act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  Bd. of Cnty. Comm'rs of Bryan Cnty., Okl., 520 U.S. at 404 (internal citations omitted).  A plaintiff can establish custom by

conducting a statistical analysis of lawsuits against a municipality for a violation of a particular constitutional right. See Simpson v. Ferry, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (permitting a Monell claim to proceed following a review of the plaintiff's statistical analysis about the number of lawsuits brought against the Philadelphia Police Department for use of excessive force). Additionally "[a] course of conduct 'so permanent and well settled as to constitute a custom or usage with the force of law' may constitute an official custom." Stringer v. Cnty. of Bucks, No. CV 22-1525, 2023 WL 2163871, at *6 (E.D. Pa. Feb. 22, 2023) (citing Monell, 436 U.S. at 691).

Here, similar to his policy allegations, Plaintiff merely alleges that Bucks County engaged in a custom of depriving inmates the opportunity to be heard by a hearing officer in situations where the circumstances could negatively reflect on an officer. (See Doc. No. 11 at ¶ 41.) Again, Plaintiff provides no support for these assertions and only alleges conclusory allegations in his Amended Complaint of a custom by Bucks County Correctional Facility without showing past incidents of other detainees being denied of a hearing.[7] See e.g., Saleem v. Sch. Dist., No 12-3193, 2013 WL 5763206, at *3 (E.D. Pa. Oct. 24, 2013) (explaining that pleadings "bereft of any assertions of relevant facts," containing only the "plaintiff's bare allegations . . . . are insufficient to show his entitlement to relief"); Niblack v. Murray, No. CIV.A. 12-6910 MAS, 2013 WL 4432081, at *8 (D.N.J. Aug. 14, 2013) (finding the plaintiff failed to "support his naked assertion of an unlawful municipal policy or custom"); but see Simpson, 202 F. Supp. at 452 (finding the plaintiff plead sufficient evidence of repeated misconduct, including over one thousand lawsuits

---

[7] Notably, in Count Three of Plaintiff's Amended Complaint, the failure to train claim, Plaintiff relies on two cases brought in the Eastern District of Pennsylvania by Mubarak Alexander and the family of Kimberly Stringer against Defendant Bucks County. However, Plaintiff does not rely on these cases to establish an unlawful custom (Count Two).

brought against the City of Philadelphia, combined with the plaintiff's additional allegations of personal bias against him).

Thus, Plaintiff has also failed to establish any custom.

### iii.    Plaintiff Has Not Identified a Final Policymaker

Additionally, Plaintiff fails to establish or identify a policymaker. "It is clear under either route [policy or custom] that a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Watson v. Abington Twp., 478 F.3d 144, 156 (3d Cir. 2007) (internal citations omitted). A plaintiff must "allege and prove that the official established or enforced policies and practices directly causing the constitutional violation." Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 223 (3d Cir. 2015). And the policymaker in question must possess the authority to make a final policy. City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988). Absent identification of such a "decisionmaker possess[ing] final authority to establish municipal policy," a plaintiff cannot establish as a matter of law that a municipality should be subject to liability under Section 1983. Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990).

Here, the only person Plaintiff asserts in his Complaint to establish a policymaker is Sergeant O'Donnell. Plaintiff alleges he is a policymaker because he was a "supervising officer." (Doc. No. 14 at 11.) But Plaintiff fails to establish how Sergeant O'Donnell is a policymaker other than identifying his rank as sergeant.[8]  (Doc. No. 11 at ¶ 40.) This argument fails because the

---

[8] Alternatively, Plaintiff argues in his Opposition to the Motion to Dismiss that courts have found that the lack of identification of a policymaker is not detrimental to a plaintiff's case at the motion to dismiss stage. (Doc. No. 14 at 11 (citing cases).) However, other courts have held differently. See e.g., Anderson v. City of Philadelphia, No. CIV.A. 14-6747, 2015 WL 3647416, at *4 (E.D. Pa. June 12, 2015) (finding plaintiff failed to allege facts suggesting any municipal decisionmaker had personal knowledge of or involvement in the constitutional deprivation alleged in the Amended Complaint, which is "fatal" to a Monell claim); Round v. City of

Court of Appeals for the Third Circuit has held that a township police chief, a higher position than

sergeant, is not a policymaker.  See Santiago v. Warminster Twp., 629 F.3d 121, n.11 (3d Cir.

2010).  Specifically, the Third Circuit held the following:

> While Santiago is correct that, whether Chief Murphy is a final policymaker is
> ultimately a legal rather than factual question, City of St. Louis v. Praprotnik, 108
> S. Ct. 915, (1998), that does not relieve her of the obligation to plead in some
> fashion that he had final policy making authority, as that is a key element of a
> Monell claim. In any event, as a matter of Pennsylvania state law, a township Police
> Chief is not a final policymaker.

Id.; see also Moore v. Lower Frederick Township. Et al., No. CV 20-5920, 2022 WL 657068, at

*4 (E.D. Pa. Mar. 4, 2022) (same).  Without a policymaker tied to the conduct underlying the

alleged harm, Plaintiffs' claim against Bucks County cannot be sustained.

Taken together, when viewing the allegations in the Amended Complaint in a light most

favorable to Plaintiff, he provides no factual details regarding the existence, scope or application

of an alleged policy and/or custom.  He also fails to identify a policymaker who acquiesced to a

policy or custom that deprived inmates of a hearing when placed on RHU status.  Therefore, Count

Two against Defendant Bucks County will be dismissed.

> ### 2.  Defendants' Motion to Dismiss Count Three, Failure to Train, Will Be Granted Because Plaintiff Has Not Shown that Bucks County Was Deliberately Indifferent to the Use of Excessive Force by Untrained Correctional Officers

As noted, in Count Three, Plaintiff asserts that Bucks County was deliberately indifferent

to violations of his constitutionally protected rights.  (See Doc. No. 11 at ¶ 49.)  Specifically,

Plaintiff contends that Bucks County did not properly train its officers with regard to the

---

Philadelphia, No. CV 19-3513, 2020 WL 2098089, at *10 (E.D. Pa. May 1, 2020) (finding
plaintiff's Monell claim failed because it does not allege that a municipal policymaker was aware
of the municipal policy or custom at issue);  Taylor v. Pennsylvania, No. CV 17-3369, 2018 WL
6574187, at *9 (E.D. Pa. Dec. 12, 2018) ("A plaintiff cannot state a Monell claim if he fails to
link the alleged offending policies or customs to anyone within [a municipality] who had policy-
making authority.") (internal citations omitted).

appropriate use of force.  (Id. at ¶¶ 49-51.)  In their Motion to Dismiss, Bucks County argues that Plaintiff offers only conclusory allegations that Bucks County was deliberately indifferent to the risk of constitutional violations stemming from the failure to properly train employees on the use of force.  (Doc. No. 13 at 13.)  The Court agrees.

When the alleged "custom at issue is a failure to train or supervise, the plaintiff must show that this failure 'amounts to deliberate indifference to the rights of persons with whom [the municipality's] employees will come into contact.'"  Johnson v. City of Philadelphia, 975 F.3d 394, 403 (3d Cir. 2020) (internal quotations omitted).  A plaintiff must also identify a specific deficiency, not "simply general laxness or ineffectiveness of training."  Niblack, 2013 WL 4432081, at *8.  "There also must be an affirmative link between the alleged inadequacies of the training and the constitutional violation at issue."  Id.  And although it is true that "a pattern of similar constitutional violations by untrained employees is ordinarily necessary" to make out a failure to train claim under Monell, the United States Supreme Court explained the scope of liability as follows:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees.  But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

City of Canton v. Harris, 489 U.S. 378, 390 (1989).

Therefore, in order for a municipality's failure to train to amount to deliberate indifference, a plaintiff must show that: (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of

constitutional rights.  Ancherani v. City of Scranton, No. 3:13–cv–02595, 2015 WL 5924366, at

*4 (M.D. Pa. Oct. 9, 2015) (citing Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir.1999)).

      As for the first prong, it is plausible to suggest that Bucks County correctional officers

would be confronted with situations where the use of force would be needed against incarcerated

individuals.  Correction officers are tasked with interacting with prisoners daily and are generally

responsible for their care, custody and control.  One can imagine that officers are faced with

situations where they must use some level of contact and force to maintain order at the facility.

But, as noted above, Plaintiff fails to identify a policymaker who will know that employees will

confront these situations.

      Next, as to the second prong, "[a] pattern of similar constitutional violations by untrained

employees is 'ordinarily necessary' to demonstrate deliberate indifference for. . . failure to

train."  Connick v. Thompson, 563 U.S. 51, 62 (2011) (quoting Bd. of Cnty. Comm'rs of Bryan

Cnty., Okl. v. Brown, 520 U.S. at 409).  But a plaintiff cannot simply plead that because a

municipality has been sued in the past for alleged failure to train that they are aware of a current

deficiency in their training.  As the court noted in Ezeibe v. City of York:

> Although Plaintiff has attempted to plead a pattern of prior similar constitutional
> violations that would put Defendant City on notice as to a need for additional
> training by pointing to the existence of other complaints against Defendant City
> [ ], Plaintiff's allegations nonetheless remain inadequate.  Other courts have noted
> that "mere allegations, and even settlements, do not establish liability or the
> existence of an unlawful custom."  See Simpson v. Ferry, 202 F. Supp. 3d 444, 453
> (E.D. Pa. Aug. 9, 2016).  Further, Plaintiff has not identified a "failure to provide
> specific training that has a causal nexus with [his] injuries" and has not pled any
> facts indicating "that the absence of that specific training can reasonably be said to
> reflect a deliberate indifference to whether the alleged constitutional deprivations
> occurred."  See Reitz v. Cty. of Bucks, 125 F.3d 139, 145 (3d Cir.
> 1997) (citing Colburn, 946 F.2d at 1030).  Instead, Plaintiff's allegations, as noted
> above, consist largely of conclusory assertions echoing the appropriate legal
> standard without providing factual support.

No. 1:19-CV-00189, 2020 WL 1922632, at *5 (M.D. Pa. Apr. 21, 2020).

Here, Plaintiff alleges that there have been several lawsuits brought against Bucks County, including by Mubarak Alexander and Kimberly Stringer, involving excessive force which shows that Bucks County had notice of the issue.  (Doc. No. 11 at ¶¶ 52, 54.)  He also avers that Plaintiff himself personally witnessed Bucks County officers using unwarranted use of force, including "several guards attacking one inmate."  (Id. at ¶ 53.)  Plaintiff maintains that these examples are not isolated incidents, and "merely lend credibility to his assertion" that he has witnessed other excessive use of force incidents.  (Doc. No. 14 at 12.)

However, as noted by Defendant Bucks County, in Alexander and Stringer, the court was concerned with allegations regarding the lack of specialized training on the use of force on inmates with mental illness.  See Stringer v. Cnty. of Bucks, No. CV 22-1525, 2023 WL 2163871, at *7 (E.D. Pa. Feb. 22, 2023); Alexander v. Bucks Cnty., No. 21-CV-4633-KSM, 2023 WL 3229928, at *8 (E.D. Pa. May 2, 2023) (both alleging that Bucks County failed to adequately train corrections officers on the use of force that is appropriate in situations involving inmates with mental illnesses.)   In Stringer, the court dismissed plaintiff's failure to train claim, finding "Stringer's general allegations [wer]e not enough to state a claim absent any allegations about other past similar incidents or any other information that would suggest any failure to train amounts to deliberate indifference."  2023 WL 2163871, at *7.  It also found that she "identifie[d] no facts to show why correctional officers were not properly trained, supervised, or monitored."  Id.

The court in Alexander upheld the plaintiff's failure to train claim because he was able to allege with specificity other inmates who were in the Mental Health Unit at Bucks County Correctional Facility ("BCCF") that were specifically placed in a restraint chair without justification.  Alexander, 2023 WL 3229928 at *7.  "[Plaintiff] alleges that BCCF has no policy on the appropriate amount of force to be used in situations involving inmates with mental illnesses,

and that BCCF's use of force training lacks specialized training on the appropriate amount of force to be used in such situations, and in particular, lacks training on the appropriate use of the restraint chair on inmates housed in the [Mental Health Unit]." Id. at *8.

Here, when comparing Alexander and Stringer to the instant case, those cases against Bucks County regard the failure to have specialized training for inmates with mental illness. This scenario does not concern the issue asserted in this case. Moreover, the fact that Bucks County has been sued for other alleged instances of failure to train does not suffice here to show that it was acting with deliberate indifference. The cases relied upon by Plaintiff are inapposite to the facts averred in the Amended Complaint. For these reasons, Plaintiff has failed to plead sufficient facts that show a pattern of excessive force occurring at Bucks County Correctional Facility due a lack of training. Likewise, Plaintiff has failed to provide any information about the additional incidents involving Bucks County officers that he claims to have personally witnessed that would show whether the circumstances alleged in this case are sufficiently similar.

Lastly, as to the third prong, when officers "make the wrong choice", that is, when they use excessive force, the results will likely lead to a deprivation of a constitutional right. Simpson, 202 F. Supp. 3d at 456; Carter v. City of Philadelphia, 181 F.3d at 357.

Taken together, though, Plaintiff has failed to allege sufficient facts showing that Bucks County was deliberately indifferent in failing to train its officers regarding the use of force. In viewing the facts in a light most favorable to Plaintiff, he merely alleges conclusory statements, not plausible facts, that suggest Bucks County officers were inadequately trained regarding the use of force. See Torres, 2008 WL 2600314, at *5 (finding the amended complaint failed to specifically demonstrate how the training was inadequate or to suggest how defendants evinced deliberate indifference to the plaintiff's rights.); Witt, 2021 WL 3465597 at * 7 ("Plaintiff does not

identify a particular deficiency in the actual training program, only the conclusory allegation that training was inadequate.")  The singular altercation between Plaintiff and Officer Smythe alleged here has not established a larger issue within Bucks County in any failure to train its officers.  See e.g., City of Canton, Ohio, 489 U.S. at 391 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.")

Therefore, even accepting the Amended Complaint's factual allegations as true and viewing them in the light most favorable to Plaintiff, he has failed to plead a Monell claim for failure to train against Defendant Bucks County.  Accordingly, Count Three of the Amended Complaint will be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Counts Two and Three of the Amended Complaint will be granted.  (Doc. No. 11.)  However, Defendant's Motion to Dismiss Counts One and Four against Officer Smythe will be denied.  An appropriate Order follows.