IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY MACK,

                Plaintiff,

    v.

OFFICER PHILLIP SMYTHE,

                Defendant.

CIVIL ACTION

NO. 23-4386

## ORDER

    **AND NOW**, this 19th day of February 2026, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 37), Plaintiff's Response in Opposition (Doc. No. 47), and Defendant's Reply (Doc. No. 59), it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 37) is **DENIED.** [1]

---

[1] **INTRODUCTION**

The Court is intimately familiar with the facts of this case, which are set out in full detail in the Opinion and Order issued on November 27, 2024. (See Doc. No. 15.)

For the purposes of this Opinion, however, the undisputed facts are as follows: on January 14, 2023, Plaintiff was a pretrial detainee at the Bucks County Correctional Facility ("BCC"), where Defendant worked as a correctional officer. (Doc. No. 37-2 at 1, Doc. No. 47-1 at 1.) On January 14, 2023, while in the dining facility at BCC, Plaintiff approached Defendant and requested to replace his cold tray of food with a hot one. (Doc. No. 37-2 at 2, Doc. No. 47-1 at 1.) Defendant responded by telling Plaintiff to either throw away the tray of food or sit back down. (Doc. No. 37-2 at 2, Doc. No. 47-1 at 1.) Plaintiff subsequently requested to speak with Defendant's sergeant. (Doc. No. 37-2 at 2, Doc. No. 47-1.) Defendant reiterated his prior command: sit down or throw away the tray of food. (Id.) The Parties dispute whether Plaintiff ignored Defendant's directives, but what remains undisputed is that shortly after this back and forth, Plaintiff and Defendant were involved in a physical altercation where Defendant used force to bring Plaintiff to the ground. (Doc. No. 37-2 at 2–3, Doc. No. 47-1 at 2–3.)

## PROCEDURAL BACKGROUND

Following the altercation, Plaintiff filed suit on November 9, 2023, against both Defendant Smythe and Bucks County, alleging constitutional violations under 42 U.S.C. § 1983 and state law claims of assault and battery.  (Id.)

On November 27, 2024, this Court issued an Opinion and Order dismissing Plaintiff's claims against Bucks County but permitting the claims against Defendant Smythe to remain.  (See Doc. No. 15.)  Since then, the case has proceeded through discovery.  On October 22, 2025, Defendant Smythe filed the instant Motion for Summary Judgment.  (Doc. No. 37.)  On December 8, 2025, Plaintiff filed a Response in Opposition.  (Doc. No. 47.)  And on December 15, 2025, Defendant filed the Reply (Doc. No. 59).  The Motion for Summary Judgment (Doc. No. 37) is now ripe for disposition.

## STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this decision, the Court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Hart v. Elec. Arts, Inc., 717 F.3d 141, 148 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010)).  "A dispute 'is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.'"  Moody v. Atl. City Bd. of Educ., 870 F.3d 206, 213 (3d Cir. 2017) (citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).  A disputed fact "is material only if it might affect the outcome of the suit under governing law."  Id.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Meditz v. City of Newark, 658 F.3d 364, 369 (3d Cir. 2011) (quoting Azur, 601 F.3d at 216).  "The moving party is entitled to judgment as a matter of law when the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'"  Range v. AG United States, 53 F.4th 262, 269 (3d Cir. 2022) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247–49.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the nonmoving party's evidence over that presented by the moving party.  Id. at 255.  If there is no

factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.


## RELEVANT STANDARDS OF EXCESSIVE FORCE FOR PRETRIAL DETAINEES UNDER THE FOURTEENTH AMENDMENT

Plaintiff sued Defendant under 42 U.S.C. § 1983 alleging excessive force was used against him in violation of protections guaranteed under the Fourteenth Amendment to the United States Constitution.  (Doc. No. 11 at 5.)  To state a cognizable claim under 42 U.S.C. § 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under color of state law." Phillips v. Cnty. of Alleghany, 515 F.3d 224, 235 (3d Cir. 2008).  Thus, Section 1983 requires a plaintiff to demonstrate two essential elements: (1) he or she was deprived of a right or privilege secured by the Constitution or the laws of the United States; (2) by a person acting under color of state law.  Williams v. Borough of West Chester, 891 F. 2d 458, 464 (3d Cir. 1989).

Here, it is undisputed that Defendant was a person acting under the color of state law at BCC at the time of the January 14, 2023 altercation.  (See Doc. No. 15 at 9.)  Moreover, the constitutional right at issue, and whether it was violated, which is disputed, is the use of excessive force in violation of the Fourteenth Amendment.

As just noted, it is undisputed that Defendant was acting under color of state law in his capacity as a correctional officer at BCC during the January 14, 2023 altercation. Moreover, because Plaintiff was a pretrial detainee at the time of the altercation with Defendant, his claim for excessive force is governed by the Due Process Clause of the Fourteenth Amendment.  Kingsley v. Hendrickson, 587 U.S. 389 (2015).  To establish a claim for excessive force, pretrial detainees must show "only that the force purposely or knowingly used against him was objectively unreasonable."  Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) (citing Kingsley 587 U.S. at 396–97).  Thus, the Fourteenth Amendment employs an objective-reasonableness standard.  Id.

Evaluating whether an officer has used objectively unreasonable force requires the trier of fact to pay "careful attention to the facts and circumstances of each particular case." Id. (citing Graham v. Connor, 490 U.S. 386, 396 (1989)).  Those circumstances include: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force used; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. Id. at 194–95 (citing Kingsley, 576 U.S. at 397).

A court considers these circumstances "from the perspective of a reasonable officer on the scene[,]" as running a jail is an "inordinately difficult undertaking."  Id. at 195

(quoting Turner v. Safley, 482 U.S. 78, 84–85 (1987)).  Given that safety and order are paramount within correctional facilities, the expertise of correctional officials is significant; and they must be able to wield substantial discretion to "devise reasonable solutions to the problems they face." Id. (quoting Kingsley, 576 U.S. at 399). Correctional officers faced with disturbances are required to make split-second decisions in undeniably "tense, uncertain, and rapidly evolving" circumstances. Id. (quoting Kingsley, 576 U.S. at 399).  Thus, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates an inmate's constitutional rights." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1991)).

However, the existence of security video footage presents an "added wrinkle" to the analysis required of courts at the summary judgment stage when deciding claims for excessive force under 42 U.S.C. § 1983.  Jacobs, 8 F.4th at 192.  The presence of security footage, which is present in this case, requires a court to abstain from adopting a version of facts that are "blatantly contradicted" by such footage.  Id. (quoting Scott v. Harris, 550 U.S. 372, 378 (2007)).

**ANALYSIS**

Defendant contends that he is entitled to summary judgment on Plaintiff's claims arising under Section 1983 for three reasons:  (1) the amount of force used was de minimis and therefore reasonable; (2) Plaintiff suffered de minimis injuries;  and (3) even if the amount of force used was unreasonable, Defendant is nonetheless entitled to qualified immunity. (Doc. No. 37.)  Defendant likewise contends he is entitled to summary judgment on Plaintiff's state law claims for assault and battery.  (Id.)  Because questions regarding whether the amount of force used was reasonable and the severity of the injuries alleged by Plaintiff are intertwined, the Court will address those arguments first.

**SUMMARY JUDGMENT WILL BE DENIED BECAUSE GENUINE DISPUTES OF MATERIAL FACT EXIST AS TO WHETHER DEFENDANT'S USE OF FORCE WAS REASONABLE**

Defendant first insists that the force used was de minimis and therefore no genuine dispute of material fact exists as to whether Defendant's use of force was reasonable.  (See Doc. No. 37 at 6.)  More specifically, Defendant notes that the force applied against Plaintiff consisted of "running [Defendant's] left hand around [Plaintiff's] midsection….[Defendant] interlock[ing] his fingers in a pressure point in [Plaintiff's] midsection, pick[ing] [Plaintiff] up off the ground and slam[ing] [Plaintiff] to the ground…" (Id. at 7.)  Defendant avers this is a reasonable use of force because it resulted in de minimis injury, as Plaintiff alleges that he suffered "rib pain…and a lump on his hip" as a result of the altercation with Defendant.  (Id.)

As a threshold matter, a brief recitation of the video footage of the January 14, 2023 capturing the altercation is helpful to conceptualize Defendant's averments as to (1) the reasonableness of the force used and (2) the extent of the injuries alleged by Plaintiff:

4

> Plaintiff arrives to the cafeteria first in line ahead of numerous inmates; Plaintiff retrieves his tray of food and is directed to his seat by Defendant and another officer who are standing near the food station; Plaintiff begins to walk to his seat, turns around to speak with another inmate as Defendant watches on before ultimately sitting down; Plaintiff sits down amongst other inmates as Defendant remains standing near the food station; several other inmates approach the food station to retrieve their meal tray as Defendant remains standing near the food station; eventually Plaintiff stands up, walks back towards Defendant and approaches Defendant with his tray of food; Plaintiff and Defendant have a conversation as other inmates continue to retrieve their food trays and walk towards their seats, passing Plaintiff and Defendant; Defendant reaches for the tray, Plaintiff pulls back and turns around and begins to walk in the direction of where he had been sitting previously; Defendant then proceeds to use force on Plaintiff as the other officer and inmates present watch.

(<u>See</u> Doc. No. 56, Video Exhibit.)

Defendant maintains the facts here are analogous to those in <u>Washam v. Klopotoski</u>, where the Third Circuit found the force used on an inmate at a correctional facility reasonable because it was <u>de minimis</u>.  (<u>Id.</u> at 7–8) (citing 403 F. App'x 636, 640 (2010) (noting that the force used was comprised of (1) knocking books from plaintiff's hands; (2) slamming plaintiff on the ground; and (3) handcuffing plaintiff which resulted in minor injuries)).

But Defendant's reliance <u>Washam</u> is flawed.  While the facts of the altercation between the inmate and correctional officer in <u>Washam</u> are somewhat analogous to those at issue here, Defendant omits one crucial difference: the inmate in <u>Washam</u> was a convicted inmate, not a pretrial detainee.  <u>Washam</u>, 403 F. App'x at 637.  It bears repeating that pretrial detainees' claims for excessive force are governed by the Fourteenth Amendment, not the Eighth. <u>Jacobs</u>, 8 F.4th at 194.  Additionally, the injuries alleged by the plaintiff in <u>Washam</u> were admittedly minor: abrasions on the shoulder and knee.  <u>Washam</u>, 403 F. App'x at 640.  Whereas here, Plaintiff's alleged injuries consisted of (1) chest pain accompanied by a "popping sound" with each breath and (2) a "baseball-sized mass" on his right hip.  (Doc. No. 11 at 4–5.)

Defendant likewise cites numerous cases asserting that the <u>de minimis</u> force doctrine is applicable in the context of the Fourteenth Amendment for claims alleging excessive force, particularly where minor injuries are alleged.  And while it is true that a successful constitutional claim requires more than <u>de minimis</u> force resulting in more than <u>de minimis</u> injury, in each of the cases cited by Defendant, the plaintiff failed to allege they suffered a cognizable injury attributable to the officer's conduct.  <u>See</u> <u>Bressi v. Brennen</u>, 823 F. App'x

116, 119 (3d Cir. 2020) (affirming the district court's finding that the inmate failed to allege a constitutional violation because he did not allege he was harmed by the correctional officer's conduct); Walthour v. Miller, 795 F. Supp. 2d 317, 325–26 (E.D. Pa. 2011) ("…[T]he record is clear that Plaintiff was not injured by Defendant. In fact, Plaintiff does not even allege to have been injured. Without any injury, there can be no constitutional violation involving excessive force."); Smith v. Cpl. Louriero, No. 16-cv-0741, 2017 WL 2952819, at * 5 (M.D. Pa. June 9, 2017) (noting that the plaintiff failed to allege that the officers' use of force caused any injuries); Garcia v. Cnty. of Bucks, PA, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001) (highlighting that the force used during the arrest did not result in even a de minimis injury).

In viewing the facts in the light most favorable to Plaintiff, the Court cannot conclude as a matter of law that there is no genuine dispute of material fact as to whether the force used by Defendant was reasonable and that Plaintiff suffered merely de minimis injuries.

First, a reasonable jury could conclude any claimed perception that Plaintiff posed a threat to Defendant is vitiated by the fact that Plaintiff's back was to Defendant immediately prior to the altercation.  Second, a reasonable jury could also conclude that bringing Plaintiff to the ground was inappropriate given that Plaintiff appeared to walk back in the direction of his seat prior to Defendant's use of force.  Third, a reasonable jury could conclude that Plaintiff's request of a warm tray of food posed minimal security risks, particularly because neither any inmates nor the other officer present appeared to react to this request. Fourth, a jury could likewise conclude that because Plaintiff appeared to be walking back in the direction of his seat, he was complying with, not resisting, Defendant's directives. Fifth, reasonable minds could also disagree as to whether Defendant made any attempt to limit the amount of force used—especially because of how little time elapsed between Defendant directing Plaintiff to return to his seat or throw away the tray of food and Defendant ultimately taking Plaintiff to the ground.  Finally, Defendant insists that the injuries alleged by Plaintiff are dispositive to prove the force used was reasonable because the alleged injuries are "minimal;" but this fact—on its own—cannot support the conclusion that Defendant's use of force was reasonable as a matter of law.  Notably, Plaintiff alleges that, because of the altercation with Defendant, he suffered (1) chest pain accompanied by a "popping sound" with each breath and (2) a "baseball-sized mass" on his right hip.  (Doc. No. 11 at 4–5.)  Reasonable minds could reach different conclusions as to whether those alleged injuries are more than simply de minimis.

Again, claims for excessive force under the Fourteenth Amendment are highly fact intensive inquiries.  Jacobs, 8 F.4th at 194. The facts here—particularly the video footage of the altercation—could lead reasonable minds to different conclusions as to whether the force used by Defendant was excessive and thus unreasonable.

**SUMMARY JUDGMENT WILL BE DENIED BECAUSE THERE ARE GENUINE DISPUTES OF MATERIAL FACT OF WHETHER DEFENDANT IS ENTITLED TO QUALIFIED IMMUNITY**

Defendant next contends that even if questions remain as to whether the force used by Defendant was reasonable, Defendant is nonetheless entitled to summary judgment under the doctrine of qualified immunity. (Doc. No. 37 at 11–16).

In resolving questions of qualified immunity at the summary judgment stage, a court must engage in a two-part inquiry. Tolan v. Cotton, 572 U.S. 650, 655 (2014). First, a court considers whether the officer violated a federal constitutional right. Checker Cab Philadelphia v. Philadelphia Parking Auth., 306 F. Supp. 3d 710, 752 (E.D. Pa. 2018). Second, a court must determine whether the right at issue was clearly established at the time of the alleged violation. Id. A "clearly established right" is one that is sufficiently clear so that every reasonable officer would have understood that his or her conduct violated that right, such that existing case law would have "placed the statutory or constitutional question beyond debate." Id. (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The "clearly established" inquiry ensures that officers are not held liable unless they had reasonable notice that their conduct would be considered unlawful. Evans v. Newark City, 152 F.4th 537, 544–45 (3d Cir. 2025). Put differently, existing case law must provide "fair warning" that an officer's conduct is unconstitutional. Stringer v. Cnty. of Bucks, 141 F.4th 76, 85 (3d Cir. 2025) (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)). "Typically, analogous precedent from the Supreme Court or [controlling law from the Court of Appeals] is required." Id.

Here, the Court defines the constitutional right at issue as whether using physical force to subdue a pretrial detainee who may have disobeyed a command, but without using physical force in doing so, violates the prohibition against using excessive force under the Fourteenth Amendment. But because there are genuine disputes of material fact as to the reasonableness of this force, deciding whether Defendant is entitled to qualified immunity at the summary judgment stage is inappropriate. See Nunn v. Delligatti, No. 24-cv-6810, 2025 WL 3629943, at *8 (E.D. Pa. Nov. 24, 2025) (declining to decide whether the defendant officer was entitled to qualified immunity at summary judgment because there were factual disputes as to the reasonableness of the force used); Parrilla Perez v. Vega, No. 18-cv-0997, 2020 WL 977433, at *9 (E.D. Pa. Feb. 28, 2020) ("Where the reasonableness of the force used is factually disputed, and the force can be interpreted as plainly unreasonable and in violation of a clearly established right if a plaintiff's account is given credit, district courts tend to deny qualified immunity."); Guthrie v. Guthrie, 216 F. Supp. 3d 590, 596 (W.D. Pa. 2016) (noting that because questions of material fact persisted as to the force used, granting summary judgment on qualified immunity grounds was premature; Geist v. Ammary, 40 F. Supp. 3d 467, 485–86 (E.D. Pa. 2014) (denying application of qualified immunity at summary judgment because material factual disputes remained as to officer's use of a taser and noting "[t]hese disputes should be resolved by a jury, not the court.")

7

BY THE COURT:

/s/ Joel H. Slomsky
_____
Joel H. Slomsky, J.

As noted above, reasonable minds could reach different conclusions as to whether the force used by Defendant was excessive and therefore unreasonable. Thus, because factual issues persist as to the reasonableness of the force used by Defendant, granting summary judgment based on qualified immunity is premature.

### THERE ARE GENUINE DISUPTES OF MATERIAL FACT AS TO PLAINTIFF'S STATE LAW CLAIMS FOR ASSAULT AND BATTERY

Finally, Defendant contends there is no genuine dispute of material fact as to Plaintiff's state law claims for assault and battery because Defendant's use of force was reasonable. (Doc. No. 37 at 16.)

"Under Pennsylvania law, 'an assault is an intentional attempt by force to do an injury to the person of another and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" Parilla Perez, 2020 WL 977433, at *13 (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)). Moreover, "in making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest." Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 870 (E.D. Pa. 2000). "The reasonableness of the force determines whether the police officer's conduct constitutes an assault and battery." Id. Thus, a claim "brought under Pennsylvania law for excessive force by a police officer [constitutes] a claim for assault and battery." Id.

As discussed extensively supra, there are genuine disputes of material fact which preclude the Court from finding that the force used by Defendant was reasonable. Thus, Plaintiff has sufficiently stated a claim for assault and battery under Pennsylvania state law. See Parrilla Perez, 2020 WL 977433, at *13 (finding that because factual disputes persisted as to whether the defendant officer had used reasonable force or not, the plaintiff's state law claims for assault and battery survived the defendant officer's motion for summary judgment); Martin v. City of Reading, 118 F. Supp. 3d 751, 767 (E.D. Pa. 2015) (declining to enter summary on state law claims for assault and battery against the officer because genuine disputes of material fact existed as to whether the officer's use of force was reasonable).

Thus, the Court will permit Plaintiff's state law claims for assault and battery to proceed.

### CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 37) will be denied.